UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CAMILLA BARLOW, individually                      CIVIL ACTION
and as representative of a class

VERSUS                                            NO. 11-236

SAFETY NATIONAL CASUALTY                          SECTION "F"
CORPORATION, ET AL.

### ORDER AND REASONS

Before the Court is the defendants' motion to dismiss. For the reasons that follow, the motion is DENIED in part and GRANTED in part.

### Background

This putative class action lawsuit arises out of alleged unlawful collection actions engaged in by the defendants in their efforts to collect on a bail bond obligation after the bond forfeiture judgment had been set aside.

On September 30, 2007 Camilla Barlow paid AAA Bail Services, Inc. $475.00 for a bail premium in order to bail her son, Eric Dougherty, out of jail. In connection with posting the bond, and as collateral, Barlow was required to execute a promissory note for $3,500.00 and an indemnity agreement. In fact, Barlow executed various contracts, including a "Contract & Application for Bail Bond," "Indemnitor Application," and "Bail Bond Indemnitor Promises." These agreements including various provisions regarding indemnification; for example, the application provides:

1

> I UNDERSTAND THAT I AM CO-SIGNING WITH AAA BAIL SERVICES, INC. ON THE BAIL BOND THAT IS BEING POSTED WITH THE COURT. I ALSO UNDERSTAND THAT I WILL BE FINANCIALLY LIABLE FOR ANY LOSSES, EXPENCES [sic], OR ADDITIONAL CHARGES THAT OCCUR AS A RESULT OF THE DEFENDANT NOT MEETING ALL OF THE OBLIGATIONS UNDER THE BAIL BOND CONTRACT. I ALSO UNDERSTAND THAT I AM RESPONSIBLE FOR BRINGING THE DEFENDANT BACK TO THE BAIL BOND OFFICE SO THAT THE PAPER WORK CAN BE COMPLETED, SIGNED AND A PICTURE OF THE DEFENDANT CAN BE TAKEN.

The application also included this indemnity provision:

> To indemnify the Company against all liability, loss, damages, attorney fees and expenses whatsoever, including, but not limited to returning prisoner costs, which the Company may sustain or incur in making such bond, prosecuting or defending any action brought in connection therewith, and enforcing any of the agreements herein contained, and specifically enforcing any collateral or indemnifying agreement as well as any expense in locating Defendant and producing him in Court. If upon failure of the parties to comply with any of the terms or conditions of this agreement and should it be necessary for the Company to refer the agreement to an Attorney for collection, the Parties agree to pay an attorney fee of 33-1/3% whether or not such action proceeds to judgment.

Similarly, the Bail Bond Indemnitor's Promises contract provided:

> Indemnification: I, the undersigned hereby agree to save and hold the surety and its agents and/or assigns from any loss whatsoever resulting from the failure of the above named defendant to appear in court as ordered. I, the undersigned hereby agree to pay all cost (500.00 minimum charge) associated with the failure of the above named defendant to appear in Court as ordered, in U.S. currency to surety, its agents and/or assigns upon the failure of the above named defendant to appear in Court as ordered. A copy of a judgment of bond forfeiture naming the above named defendant shall be prima facie evidence of loss sustained by surety and against agents and/or assigns.

On February 1, 2008 Doughterty failed to appear for his

2

arraignment; the court issued a bench warrant and an order of bond forfeiture. One week later, on February 8, the court executed a judgment in favor of the State of Louisiana and against Eric Dougherty, as principal, and Safety National Casualty Corporation, as surety, for $3,500.00. On March 4, 2008 Eric Dougherty appeared in court through counsel, at which time the bench warrant was recalled and the bond forfeiture judgment was set aside.[1]

Barlow complains that, beginning on March 11, 2008 Singletary & Associates, A Professional Law Corporation, initiated collection efforts against Barlow for the bond amount of $3,500.00, including making telephone calls to Barlow's home in which someone pretended to be an employee of Safety National Casualty Corporation. Almost two years later, on February 22, 2010, Commercial Surety Consultants, LLC and Financial Recovery Agency, Inc., collection agencies, sent a letter to Barlow, which stated:

> Re: Judgment of Bond Forfeiture $3,500.00....
>
> Dear CAMILLA BARLOW,
>
> This account has been listed with our office for collection.

---

[1] According to the defendants, Safety National was not provided notice, nor was it entitled to notice under Louisiana law, of the later appearance of the criminal defendant. And, defendants suggest, even though the bond may have been deemed satisfied, Safety National still had a judgment recorded against it and was not provided with notice by the court or sheriff of its satisfaction. All of which this Court might consider in the context of future motion practice, once the pleadings are complete, that might present challenges beyond that of the technical sufficiency of the plaintiff's allegations.

3

> You are contractually obligated to pay this account because a judgment of bond forfeiture has been filed against SAFETY NATIONAL CASUALTY CORP. You may have an opportunity to reduce this debt by obtaining a cancellation of the bond forfeiture judgment. We advise you to seek independent legal advice to inform you of your rights and responsibilities. If you are unable to cancel this judgment of bond forfeiture or refuse to do so, we shall be left with no alternative but to seek the collection of the entire debt.
>
> This communication is from a debt collector. This is an attempt to collect a debt....
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid....

And on July 7, 2010 Safety National Casualty Corporation sued Barlow in Baton Rouge city court for breach of contract based on the indemnity agreement; the lawsuit was drafted by Singletary & Associates. Six days later, the Baton Rouge city court returned the petition because of "improper cumulation of defendants"; the court invited counsel for Safety National to re-file its petition for damages for breach of contract to indemnify a commercial surety, but Safety National has yet to re-file.

On December 14, 2010 Barlow, on behalf of a putative class, sued Safety National Casualty Corporation, Singletary & Associates, A.P.L.C., Financial Recovery Agency, Inc., and Commercial Surety Consultants, Inc. in the U.S. District Court for the Middle District of Louisiana, alleging three violations of the Fair Debt Collection Practices Act and a claim for abuse of process under

4

Louisiana law. In response to Barlow's contentions that the defendants' pursuit of Safety National's indemnity rights constituted improper collection efforts, the defendants responded with a motion to dismiss. Almost one week before her opposition papers were due, on March 22, 2011, Barlow filed a notice of dismissal, and the lawsuit was dismissed without prejudice.

Just two weeks later, on April 8, 2011, Barlow re-filed her complaint, again invoking the U.S. Middle District court's federal question jurisdiction under the Fair Debt Collection Practices Act, and asserting the same claims and factual allegations. The plaintiff seeks to represent a class defined as:

> All persons who were required to execute an indemnity promise in connection with a Safety National Casualty Corporation bail bond obligation and who were subject to unlawful collection actions by the defendants even though any underlying bench warrant(s) had been recalled and any previously rendered Bond Forfeiture judgment(s) had been set aside.

Barlow contends that each of the defendants were acting as agents of Safety National Casualty Corporation in the capacity as "debt collectors."

This putative class action was reassigned to this Court from the Middle District of Louisiana on August 29, 2011. On January 6, 2012 Barlow, with leave of Court, filed a first amended class action complaint, in which she added Commercial Surety Consultants, LLC as a defendant.

The defendants now urge the Court to dismiss the plaintiff's

5

amended complaint; they contend that the plaintiff's claims fall outside the scope of the Fair Debt Collection Practices Act and that, even if the Act applies, the plaintiff fails to state a claim for relief under both the Act and state law principles of abuse of process.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)). In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982). Indeed, the Court must first identify pleadings that are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). A corollary: legal conclusions

6

"must be supported by factual allegations." Id. at 1950. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 129 S.Ct. at 1949 (2009))(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (citing Twombly, 550

U.S. at 557) (internal quotations omitted).

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated in the plaintiffs' complaint that are central to the plaintiff's claim for relief. <u>Causey v. Sewell Cadillac-Chevrolet, Inc.</u>, 394 F.3d 285, 288 (5th Cir. 2004) (citing <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000)). Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment. <u>See</u> <u>United States ex rel. Willard v. Humana Health Plan of Texas Inc.</u>, 336 F.3d 375, 379 (5th Cir. 2003).

The defendants point out that the complaint refers to contracts entered into by Barlow, demands for payment, and filed state court pleadings; because these documents are central to Barlow's claims and are referred to in the complaint, the defendants contend that consideration of them does not operate to convert their motion to dismiss into one for summary judgment. The Court agrees.

### II.

The defendants seek dismissal of the plaintiff's complaint on the grounds that (1) the pursuit of indemnity does not qualify as a "debt" under the Fair Debt Collection Practices Act and, therefore, her claims invoking the consumer protection statute fail

8

as a matter of law; (2) even if Barlow's indemnity obligation meets the definition of a "debt" and falls within the scope of the Act, the plaintiff fails to state a plausible claim that the defendants' collection efforts were improper; and (3) the state law abuse of process claim fails as a matter of law in that Safety National never sought improper relief in state court.

*A.*

As a threshold matter, the Court must consider the scope of this consumer protection law, the Fair Debt Collection Practices Act, and determine whether it applies to the practice of bail bonding.

The Fair Debt Collection Practices Act makes it unlawful for "debt collectors" to use abusive tactics while collecting a "debt" for others. Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985); 15 U.S.C. § 1692. 15 U.S.C. § 1692 (e) announces Congress's purpose in enacting the Fair Debt Collection Practices Act:

> It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e).

To state a claim under the FDCPA, a plaintiff's allegations must establish that the money being collected qualifies as a

9

"debt." See 15 U.S.C. § 1692a(5). The mere obligation to pay does not constitute a debt; rather, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Here, the defendants challenge the existence of a "debt"; they contend that the pursuit of indemnity does not meet the FDCPA definition. However, the only cases invoked by defendants in support of their position on this threshold issue -- Nat'l Union Fire Ins. Co. of Pittsburgh v. Hartel, 741 F. Supp. 1139 (S.D.N.Y. 1990) and Cook v. Hamrick, 278 F. Supp. 2d 1202 (D. Colo. 2003) -- are distinguishable.

In Hartel, the district court determined that promissory notes used to pay for a portion of an investor's partnership interest in a tax-shelter limited partnership were not a "debt" within the meaning of the FDCPA.[2] Hartel is clearly distinguishable from the

---

[2]Most of Hartel's $100,000 investment in a limited partnership formed to purchase and operate hotels and motels was paid for by promissory notes that were then negotiated to a bank to secure a working capital loan. Hartel, 741 F. Supp. 1139, 1139. National Union issued a bond to the partnership, guaranteeing the bank that Hartel would make all payments under the notes. Id. at 1139-40. In return, National Union required that Hartel execute an indemnity agreement, in which he agreed to reimburse National Union for any payments National Union would make on his behalf to the bank. Id. When Hartel quit paying on the notes, National Union made the payments for him, then filed suit for reimbursement under

10

circumstances presented by Barlow's case: debts like Hartel's that are incurred for purely business-related obligations clearly fall outside the scope of the FDCPA, which by its terms protect persons engaging in transactions for personal or family reasons that are fundamentally distinguishable from business-related obligations.

Cook, likewise, has no persuasive force here.[3] There, the district court held that the demand for attorney's fees in a landlord's eviction complaint did not constitute a communication regarding a "debt" because any such fees would have arisen out of the eviction proceeding and not out of any consumer transaction.

---

the indemnity agreement. Id. at 1140. When a venue question specific to the FDCPA was raised, National Union and its counsel sought a declaratory judgment that they had not violated the FDCPA. Id. The district court granted National Union's motion for summary judgment, explaining that "[t]he promissory notes signed by Hartel are not a 'debt' within the meaning of section 1692a(5) of the FDCPA...." Id. (also concluding that the law firm representing National Union in the reimbursement action was not a "debt collector" within the meaning of the FDCPA).

[3]Cook involved an underlying suit on behalf of a landlord to evict a noisy tenant in county court; in the eviction complaint, the landlord requested attorney's fees. 278 F. Supp. 2d 1202. After the tenant challenged the sufficiency of service, and the complaining neighbor indicated that she would not comply with a subpoena to testify, the landlord voluntarily dismissed the eviction action; the tenant requested attorney's fees but the request was denied. Id. at 1203-04. The tenant then filed suit in federal court under the FDCPA claiming that the landlord's request for attorney's fees in its county court complaint constituted a communication regarding a debt. Id. The district court dismissed the FDCPA claim, noting that the obligation to pay was created by something other than a consumer transaction and, therefore, did not constitute a "debt" under the FDCPA, and also determining that the lawyer was not a "debt collector" within the meaning of the Act. Id. at 1205.

11

278 F. Supp. 2d 1202, 1205.

Barlow contends that her obligation to pay clearly constitutes a "debt" under the FDCPA: she claims that the money sought to be collected constitutes a "debt" because the underlying transaction involved securing a bond to bail her son out of jail. Although it is a close call because these facts hardly constitute the quintessential consumer debt, the Court agrees.

The U.S. Court of Appeals for the Fifth Circuit has interpreted "debt" broadly, observing that "Congress...has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope. See Hamilton v. United Healthcare of Louisiana, Inc., 310 F.3d 385 (5th Cir. 2002)(holding that a group health insurer's contract-based subrogation claim, for reimbursement of benefits which it had paid to an injured employee after employee recovered third-party uninsured motorist benefits, was in the nature of a "debt", the collection of which was subject to the FDCPA requirements).

The plaintiff here invokes Hamilton, and says that her obligation to pay falls within the scope of the Act's definition of "debt"; she characterizes her obligation to pay: "The purchase of bail bond insurance by a mother for the benefit of her son was an insurance transaction primarily for personal/family purposes.... The attempted collection of an indemnity promise by the Defendants

12

Case 3:11-cv-00236-MLCF-SS   Document 28   03/06/12   Page 12 of 18

arising from bail bond insurance is an obligation which arose from the transaction and meets the...definition." Acknowledging that these facts would seem to fall within the outermost parameters of the scope of a "debt" under the FDCPA, the Court cannot say that the threshold definition of "debt" has not been met by these facts. Cf. Buckman v. American Bankers Ins. Co. of Florida, 115 F.3d 892, 894-95 (11th Cir. 1997)(per curiam).[4]

As the Eleventh Circuit has succinctly noted, the FDCPA applies to payment obligations of a (1) consumer arising out of a (2) transaction in which the money, property, insurance, or services at issue are (3) primarily for personal, family, or household purposes. See Oppenheim v. I.C. System, 627 F.3d 833 (11th Cir. 2010). Here, Barlow entered into a consensual

---

[4] Buckman is the most factually similar case. In Buckman, a mother who executed a contingent note and mortgage as part of a bail bond on her daughter's behalf sued the bail bondsman and its insurer, asserting claims under the Truth in Lending Act and the FDCPA. Id. at 893. The U.S. Court of Appeals for the Eleventh Circuit considered whether a bail bondsman's attempt to collect on a promissory note (as part of a bail bond transaction in which the plaintiff executed an indemnity agreement for surety bail bond to bail her daughter out of jail) is subject to the FDCPA. Id. It appears that the appellate court assumed without deciding that the bail bond transaction constituted a consumer debt because the court decided the motion to dismiss the FDCPA issue on other grounds, considering the scope of another defined term of the FDCPA: "debt collector". Instead of holding that the bail bondsman was a "debt collector" under the Act, the Eleventh Circuit held that the bail bond company defendant was covered by the originator exception (15 U.S.C. § 1692a(6)(F)(ii)) because the bail bondsman played a significant role in originating the bail bonds transaction, including the indemnification agreement and contingent note. Id. at 895.

13

Case 3:11-cv-00236-MLCF-SS   Document 28   03/06/12   Page 13 of 18

transaction for a bail bond insurance for her son: she paid AAA Bail Services, Inc. $475.00 for a bail premium to secure her son's release from jail. In connection with posting the bond, and as collateral, Barlow executed a promissory note for $3,500.00 and an indemnity agreement. In exchange, her son was released; when he failed to appear for his scheduled court date, the bond was forfeited, and Barlow became obligated to pay. Accordingly, Barlow's obligation to pay "aris[es] out of a transaction in which the...insurance or services which are the subject of the transaction are primarily for personal, family...purposes..." and therefore constitutes a "debt" within the meaning of Section 1692a(5).[5] Thus, to the extent the defendants ask for dismissal of the plaintiff's claims as a matter of law, the motion is DENIED.

*B.*

Having determined that the plaintiff's claims arising out of the FDCPA do not fail, as a matter of law, because she alleges a "debt" within the meaning of the Act, the Court turns to the defendants's challenge to the sufficiency of the plaintiff's allegations concerning the specific FDCPA violations and her state law abuse of process claim.

---

[5] While the defendants would have this Court define what it means to be a consumer in a more limited fashion, such as one who consumes produced goods, as the political significance of the generic label might suggest, the Court notes that the Act removes any guesswork by broadly defining the term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." See 15 U.S.C. § 1692a(3).

14

1.

Barlow asserts three claims under the FDCPA. The defendants contend that there is no discussion of the manner in which the defendants violated each of the mentioned sections of the FDCPA such that the defendants can determine the factual grounds for each such claim and that, therefore, the Court should dismiss the plaintiff's FDCPA claims for failure to state a claim. The Court agrees.

As "Claim 1" in her complaint, the plaintiff contends that the defendants violated the following subsections of the FDCPA when she complains:

> (A)  The defendants' actions abridged the FDCPA, 15 U.S.C. § 1692(e) in the following particulars:
>   (2)  The false representation of–
>   (a)  The character, amount, or legal status of any debt;
>   ...
>   (5)  The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> And FDCPA 15 U.S.C. § 1692(f)(1)
>
> The Collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless amount is expressly authorized by the agreement creating the debt or permitted by law.

These allegations, without more, fail to state a claim for relief under the federal pleading requirements. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

15

Twombly, 550 U.S. at 555 (citation omitted). None of the plaintiff's allegations concerning the defendants' alleged violations of certain provisions of the FDCPA are entitled to the assumption of truth because she merely recites the elements of the cause of action without any factual allegation against the several defendants named in her suit.[6] Thus, the defendants are entitled to dismissal of the plaintiff's FDCPA claims.

2.

Finally, the defendants seek to dismiss the plaintiff's state law abuse of process claim. In her complaint, the plaintiff asserts as Claim II:

> The filing of a lawsuit against the Petitioner by defendants, Safety National Casualty Corporation and Singletary & Associates, A.P.L.C. for a debt not owed was abuse of process, in that the indemnity contract was incomplete and the judgment had been satisfied by the subsequent appearance of the bonded defendant. The defendant's [sic] were attempting to obtain a result against plaintiff not proper under the law.

The defendants contend that this allegation fails to state a claim because the mere fact that suit was filed does not constitute an abuse of process. The defendants insist that their pursuit of

---

[6] In deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Avondale Shipyards, 677 F.2d at 1050. Here, the plaintiff makes the conclusory assertion that the defendants (collectively, without distinguishing between the several defendants) were acting as agents of Safety National in the capacity as "debt collectors". This assertion is not entitled to the assumption of truth; rather, it must be supported by factual allegations. It is boilerplate and unresponsive to the duty to adequately plead facts in such cases.

16

indemnity was proper, invoking Louisiana Code of Criminal Procedure article 329: "A contract to indemnify a surety against loss on a bail bond is valid and enforceable."

The elements for a cause of action for abuse of process, a compensable tort recognized under La.Civ.Code art. 2314, are (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding. <u>Hebert v. La. Licensed Prof'l Vocatinal Rehab. Counselors</u>, 4 So.3d 1002, 1009 (La. App. 3 Cir. 2009)(citation omitted). Taking the plaintiff's allegations as true, including the allegation that Safety National and Singletary & Associates filed an improperly cumulated lawsuit that was rejected for its procedural defectiveness but nonetheless invoked the defective lawsuit in attempting to collect the debt, the Court finds that the plaintiff has stated a claim for relief that is plausible on its face. An inquiry into the merits of any defenses that will be presented is not proper at this stage of the proceedings, where the defendants are simply challenging the sufficiency of the plaintiff's allegations.

Accordingly, the defendants' motion to dismiss is DENIED in part (insofar as the defendants contended that the FDCPA claims failed as a matter of law because the pursuit of indemnity did not constitute a debt; and insofar as the plaintiff stated a claim for abuse of process) and GRANTED in part (insofar as the plaintiff

17

failed to state a claim for violations of the FDCPA). In the event that the plaintiff's pleading deficiencies might be curable, the Court will permit the plaintiff to seek leave to amend her complaint; any such leave to amend must be filed within seven days of this Order and Reasons.

New Orleans, Louisiana, March 6, 2012

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE