UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CAMILLA BARLOW, individually                CIVIL ACTION
and as representative of a class

VERSUS                                       NO. 11-236

SAFETY NATIONAL CASUALTY                     SECTION "F"
CORPORATION, ET AL.

ORDER AND REASONS

Before the Court is the defendants' special motion to strike pursuant to La.C.C.P. art. 971. For the reasons that follow, the motion is DENIED.

## Background

This putative class action lawsuit arises out of alleged unlawful collection practices engaged in by the defendants in their efforts to collect on a bail bond obligation after the bond forfeiture judgment had been set aside.

This Court has previously summarized the facts of this case in its Order and Reasons dated March 6, 2012, in which the Court granted in part and denied in part the defendants' motion to dismiss the plaintiff's complaint; in particular, the plaintiff's abuse of process claim survived the defendants' pleadings challenge and the FDCPA claims were dismissed, but with permission to cure. With leave of Court, the plaintiff filed a second amended complaint on March 15, 2012. The defendants again challenged the sufficiency

1

of the plaintiff's amended FDCPA claims. On May 31, 2012 this Court granted in part and denied in part the defendants' motion such that some of the plaintiff's FDCPA claims survived the defendants' challenge. In light of this motion practice, the facts of this case are familiar:

On September 30, 2007 Camilla Barlow paid AAA Bail Services, Inc. $475.00 for a bail premium in order to bail her son, Eric Dougherty, out of jail. In connection with posting the bond, and as collateral, Barlow was required to execute a promissory note for $3,500.00 and an indemnity agreement. In fact, Barlow executed various contracts, including a "Contract & Application for Bail Bond," "Indemnitor Application," and "Bail Bond Indemnitor Promises." These agreements include various provisions regarding indemnification; for example, the application provides:

> I UNDERSTAND THAT I AM CO-SIGNING WITH AAA BAIL SERVICES, INC. ON THE BAIL BOND THAT IS BEING POSTED WITH THE COURT. I ALSO UNDERSTAND THAT I WILL BE FINANCIALLY LIABLE FOR ANY LOSSES, EXPENCES [sic], OR ADDITIONAL CHARGES THAT OCCUR AS A RESULT OF THE DEFENDANT NOT MEETING ALL OF THE OBLIGATIONS UNDER THE BAIL BOND CONTRACT. I ALSO UNDERSTAND THAT I AM RESPONSIBLE FOR BRINGING THE DEFENDANT BACK TO THE BAIL BOND OFFICE SO THAT THE PAPER WORK CAN BE COMPLETED, SIGNED AND A PICTURE OF THE DEFENDANT CAN BE TAKEN.

The application also included this indemnity provision:

> To indemnify the Company against all liability, loss, damages, attorney fees and expenses whatsoever, including, but not limited to returning prisoner costs, which the Company may sustain or incur in making such bond, prosecuting or defending any action brought in connection therewith, and enforcing any of the agreements

2

> herein contained, and specifically enforcing any
> collateral or indemnifying agreement as well as any
> expense in locating Defendant and producing him in Court.
> If upon failure of the parties to comply with any of the
> terms or conditions of this agreement and should it be
> necessary for the Company to refer the agreement to an
> Attorney for collection, the Parties agree to pay an
> attorney fee of 33-1/3% whether or not such action
> proceeds to judgment.

Similarly, the Bail Bond Indemnitor's Promises contract provided:

> Indemnification: I, the undersigned hereby agree to
> save and hold the surety and its agents and/or assigns
> from any loss whatsoever resulting from the failure of
> the above named defendant to appear in court as ordered.
> I, the undersigned hereby agree to pay all cost (500.00
> minimum charge) associated with the failure of the above
> named defendant to appear in Court as ordered, in U.S.
> currency to surety, its agents and/or assigns upon the
> failure of the above named defendant to appear in Court
> as ordered. A copy of a judgment of bond forfeiture
> naming the above named defendant shall be prima facie
> evidence of loss sustained by surety and against agents
> and/or assigns.

On February 1, 2008 Doughterty failed to appear for his arraignment; the court issued a bench warrant and an order of bond forfeiture. One week later, on February 8, the court executed a judgment in favor of the State of Louisiana and against Eric Dougherty, as principal, and Safety National Casualty Corporation, as surety, for $3,500.00. On March 4, 2008 Eric Dougherty appeared in court through counsel, at which time the bench warrant was recalled and the bond forfeiture judgment was set aside.[1]

---

[1] According to the defendants, Safety National was not provided notice, nor was it entitled to notice under Louisiana law, of the later appearance of the criminal defendant. And, defendants suggest, even though the bond may have been deemed satisfied,

3

Barlow complains that, beginning on March 11, 2008 Singletary & Associates, A Professional Law Corporation, initiated collection efforts against Barlow for the bond amount of $3,500.00, including by sending letters on several occasions and, on one occasion, a non-lawyer telephoned Barlow, failed to identify herself as a non-lawyer and threatened litigation to collect the $3,500.00 bond.[2]

Barlow says that Commercial Surety Consultants, Inc. And Financial Recovery Agency, Inc. also attempted to collect the $3,500.00 by correspondence dated February 2, 2010, February 22, 2010, and March 4, 2010. For example, the February 22, 2010 letter stated:

> Re: Judgment of Bond Forfeiture $3,500.00....
>
> Dear CAMILLA BARLOW,
>
> This account has been listed with our office for collection.
>
> You are contractually obligated to pay this account because a judgment of bond forfeiture has been filed against SAFETY NATIONAL CASUALTY CORP. You may have an opportunity to reduce this debt by obtaining a cancellation of the bond forfeiture judgment. We advise you to seek independent legal advice to inform you of

---

Safety National still had a judgment recorded against it and was not provided with notice by the court or sheriff of its satisfaction. All of which this Court might consider in the context of future motion practice, once the pleadings are complete, that might present challenges beyond that of the technical sufficiency of the plaintiff's allegations.

[2] In particular, the plaintiff contends that Singletary & Associates sent correspondence on March 11, 2008, March 25, 2008, May 28, 2010 and June 21, 2010; she says that she received the telephone call on July 7, 2010.

4

> your rights and responsibilities.  If you are unable to cancel this judgment of bond forfeiture or refuse to do so, we shall be left with no alternative but to seek the collection of the entire debt.
>
> This communication is from a debt collector.  This is an attempt to collect a debt....
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid....

On July 7, 2010 -- the same day Barlow alleges that she received a phone call from Singletary & Associates threatening litigation -- Safety National Casualty Corporation indeed sued Barlow (and 25 other persons) in Baton Rouge city court for breach of contract based on the indemnity agreement; the lawsuit was drafted by Singletary & Associates.  Six days later, the Baton Rouge city court returned the petition because of "improper cumulation of defendants"; the court invited counsel for Safety National to re-file its petition for damages for breach of contract to indemnify a commercial surety, but Safety National has yet to re-file. Nonetheless on July 26, 2010 Singletary & Associates, by letter, informed Barlow that she had been sued.

On December 14, 2010 Barlow, on behalf of a putative class, sued Safety National Casualty Corporation, Singletary & Associates, A.P.L.C., Financial Recovery Agency, Inc., and Commercial Surety Consultants, Inc. in the U.S. District Court for the Middle District of Louisiana, alleging three violations of the Fair Debt

5

Collection Practices Act and a claim for abuse of process under Louisiana law. In response to Barlow's contentions that the defendants' pursuit of Safety National's indemnity rights constituted improper collection efforts, the defendants responded with a motion to dismiss. Almost one week before her opposition papers were due, on March 22, 2011, Barlow filed a notice of dismissal, and the lawsuit was dismissed without prejudice.

Just two weeks later, on April 8, 2011, Barlow re-filed her complaint, again invoking the U.S. Middle District court's federal question jurisdiction under the Fair Debt Collection Practices Act, and asserting the same claims and factual allegations. The plaintiff seeks to represent a class defined as:

> All persons who were required to execute an indemnity promise in connection with a Safety National Casualty Corporation bail bond obligation and who were subject to unlawful collection actions by [the defendants] even though any underlying bench warrant(s) had been recalled and any previously rendered Bond Forfeiture judgment(s) had been set aside.

Barlow contends that each of the defendants were acting as agents of Safety National Casualty Corporation in the capacity as "debt collectors."

This putative class action was reassigned to this Court from the Middle District of Louisiana on August 29, 2011. On January 6, 2012 Barlow, with leave of Court, filed a first amended class action complaint, in which she added Commercial Surety Consultants, LLC as a defendant. As noted, the defendants moved to dismiss the

6

plaintiff's amended complaint, contending that the plaintiff's claims fall outside the scope of the Fair Debt Collection Practices Act and that, even if the Act applies, the plaintiff fails to state a claim for relief under both the Act and state law principles of abuse of process. The Court granted in part and denied in part the defendants' motion: in particular the Court determined that the plaintiff had stated a claim for abuse of process and rejected the defendants' argument that the bail bond indemnity obligation did not constitute a debt; however, the Court determined that the plaintiff failed to state a claim for FDCPA violations. The plaintiff was permitted to amend her complaint, which she did. In response to the defendants' challenge to the sufficiency of the newly-amended FDCPA claims, the Court dismissed a few but not all of the FDCPA claims. The defendants now request that this Court strike the plaintiff's abuse of process claim pursuant to Louisiana Code of Civil Procedure article 971.

I.
A.

The parties do not dispute that Louisiana law governs the plaintiff's abuse of process claim. The Fifth Circuit has held that, when Louisiana law applies, "the nominally-procedural Article 971" also governs. See Henry v. Lake Charles Am. Press, L.L.C., 566 F.3d 164, 168-69 (5th Cir. 2009); see also Brown v. Wimberly, No. 11-31080, 2012 WL 1759956, at *1 (5th Cir. May 18, 2012)(unpublished)(citing Henry and noting that "[t]his court has

7

adopted the use of the statute in federal court under Erie"). Article 971 instructs that a plaintiff who files suit "against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue" is subject to a special motion to strike. La. Code Civ. Proc. art. 971. Upon filing of a special motion to strike, all discovery proceedings are stayed until a court determines whether the plaintiff has established a probability of success on the merits. Id. art. 971(D). On noticed motion and "for good cause shown," a court may order that specified discovery be conducted before ruling on the special motion to strike. Id. The prevailing party on a special motion to strike is entitled to attorney fees and costs. Id. art. 971(B). If a court determines that the plaintiff has a probability of success on the claim, this determination is admissible in later stages of the proceedings. Id. art. 971(A)(3).

Article 971 is Louisiana's anti-SLAPP procedure, enacted to address a "strategic lawsuit against public participation." See Henry, 566 F.3d at 169. "The purpose of the special motion to strike 'is to encourage continued participation in matters of public significance and to prevent this participation from being chilled through an abuse of judicial process.'" Savoie v. Page, 23 So. 3d 1013, 1016 (La. App. 3rd Cir. 2009) (quoting Lamz v. Wells, 938 So. 2d 792, 796 (La. App. 1st Cir. 2006)). Thus, the device is

intended "to be used early in legal proceedings to screen meritless claims." Henry, 566 F.3d at 169 (quoting Lee v. Pennington, 830 So. 2d 1037, 1041 (La. App. 4th Cir. 2002)).[3]

*B.*

Significantly, consistent with article 971's purpose, it further provides:

> C. The special motion may be filed within sixty days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper. The motion shall be noticed for hearing not more than thirty days after service unless the docket conditions of the court require a later hearing.

---

[3]To achieve its purpose, "Article 971 establishes a burden-shifting analysis." Henry, 566 F.3d at 170. First, the defendants must make a prima facie showing that the action against them arises from an act in furtherance of their right of petition or free speech in connection with a public issue. See id. For example, Louisiana courts have found Article 971 available where a newspaper publishes an article on the sudden removal of a radio station from the airwaves, Starr v. Boudreaux, 978 So. 2d 384, 389 (La. App. 1st Cir. 2007), or a news station broadcasts a story about a couple's murder, Johnson v. KTBS, Inc., 889 So. 2d 329, 332 (La. App. 2 Cir. 2004). In Henry, the Fifth Circuit found the defendants had met their burden where they had published a series of news articles about the loss of a government contract and the investigation of an entity doing business with the federal and state governments. 566 F.3d at 181.
    If the defendants succeed, "the burden then shifts to the plaintiff to demonstrate a probability of success on the claim." Id. (quoting Starr v. Boudreaux, 978 So. 2d at 389). The plaintiff must produce "evidence of sufficient quality and quantity to demonstrate that he will be able to meet his burden of proof at trial." Estiverne v. Times-Picayune, L.L.C., 950 So. 2d 858, 860 (La. App. 4th Cir. 2006) (quoting Sassone v. Elder, 626 So. 2d 345, 351 (La. 1993)). This has been described as a difficult burden, justified by the importance of protecting free speech rights. Henry, 566 F.3d at 182 (finding the plaintiff had not met the burden by failing to present an affidavit that showed the fault element of defamation, but remanding to permit the district court to allow limited discovery).

9

La. Code Civ. Proc. art. 971(C).

The plaintiff contends that the defendants' motion to strike her abuse of process claim is untimely. The Court agrees. Consider this time-line:

- On December 14, 2010 Barlow filed her original class action complaint alleging violations of the FDCPA and, significantly, a claim for abuse of process under Louisiana law.
- On March 7, 2011 the defendants filed a motion to dismiss pursuant to Rule 12(b)(6), seeking to dismiss all of Barlow's claims including her abuse of process claim on the ground that she failed to state a claim for relief.
- On March 22, 2011 Barlow voluntarily dismissed the lawsuit.
- On April 11, 2011 Barlow filed the same complaint, again alleging that the defendants violated the FDCPA and again including her abuse of process claim.
- On May 25, 2011 the defendants filed a motion to dismiss pursuant to Rule 12(b)(6), challenging the technical sufficiency of each of the plaintiff's claims.
- After the case was transferred to this Court, the plaintiff filed an unopposed motion for leave to file amended class action complaint, which was granted on January 6, 2012. The amended class action complaint included the abuse of process claim originally alleged in December 2010 and April 11, 2011.
- On January 19, 2012 the defendants filed another motion to dismiss, challenging the plaintiff's first amended complaint on identical grounds pursuant to Rule 12(b)(6).
- On March 12, 2012 this Court granted in part and denied in part the defendants' motion to dismiss; significantly, the Court dismissed Barlow's FDCPA claims but permitted her to seek leave to amend and the Court declined to dismiss Barlow's abuse of process claim.
- Shortly after Barlow requested leave to file her second amended complaint (on March 13), which the Court granted on March 15, the defendants filed another motion to dismiss pursuant to Rule 12(b)(6), challenging her restated FDCPA. On May 31, 2012 the Court granted in part and denied in part the defendants' Rule 12(b)(6) motion.
- While the motion to dismiss was pending, on May 15, 2012 the defendants filed the instant motion to strike, for the first time seeking to strike the plaintiff's abuse of process claim pursuant to La.C.C.P. art. 971.

It is undisputed that the defendants filed their motion to strike

the plaintiff's abuse of process claim on May 15, 2012, which is more than one year after the plaintiff first asserted her abuse of process claim in the pending matter (and about 16 months after she originally asserted the claim). The Court finds that this belated filing is contrary to the language and purpose of the invoked procedural device, which clearly provides that the special motion to strike may be filed within 60 days of service of the petition, or with the Court's permission, at a later time. Here, it is undisputed that the defendants did not request that this Court strike the abuse of process claim within 60 days of service. Nor have the defendants requested permission to file their motion to strike at this later time.[4] Rather, the parties have participated in motion practice on the very claim that the defendants now wish to strike; the defendants should have availed themselves of this screening device earlier in the proceedings, as required by the La.C.C.P. art. 971(C).[5] Because the defendants' motion is

---

[4] Indeed, the Court cannot consider the defendants' position on the issue of timeliness because they have failed to advance any arguments suggesting that their motion to strike is timely.

[5] The plaintiff questions whether the defendants have demonstrated that the plaintiff's claim is subject to this special motion; that is, she suggests that it is not obvious that the claim arises from free speech on the part of defendants "in connection with a public issue". Indeed, the defendants have repeatedly argued that this case concerns a private contractual matter concerning indemnity obligations. But they also insist that Barlow's abuse of process claim falls within the realm of cases contemplated by La.C.C.P. art. 971 because the defendants, in furtherance of their constitutional right of petition, clearly had

11

untimely, IT IS ORDERED: that the special motion to strike is DENIED.[6]

New Orleans, Louisiana, July 24, 2012.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

a right to pursue indemnity in court on a forfeited bond. The Court need not reach the merits of the motion to strike, however, given its untimeliness. Any merits-inquiry into the plaintiff's abuse of process claim must await summary judgment motion practice, or trial.

[6]Two housekeeping matters:
(1) In a one-sentence afterthought at the conclusion of her opposition papers, the plaintiff requests leave of Court to file a motion for attorney's fees, as the prevailing party pursuant to La.C.C.P. art. 971(B). To the extent the plaintiff seeks an advisory ruling on attorney fees and costs, the request is DENIED. However, if the plaintiff files a supported formal motion in compliance with this Court's Local Rules, in which she demonstrates that, as the "prevailing party", she is entitled to an award of attorney fees and costs, then at that time the Court will consider the request; any dispute solely as to quantum will be referred to the magistrate judge.
(2) A few months after this lawsuit was filed, and before it was transferred to this Court, the plaintiff filed her "first motion to certify class". Notwithstanding this Court's prior Order requiring that all outstanding motions must be re-noticed for hearing before this Court, this motion was never noticed for hearing before this Court. Accordingly, IT IS FURTHER ORDERED: that the plaintiff's first motion to certify class (Rec.Doc. 5) is DENIED without prejudice.

Case 3:11-cv-00236-MLCF-SS   Document 50   07/24/12   Page 12 of 12