UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CAMILLA BARLOW, individually and as representative of a class | CIVIL ACTION |
| VERSUS | NO. 11-236 |
| SAFETY NATIONAL CASUALTY CORPORATION, ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is the plaintiff's motion to approve putative class communication. For the reasons that follow, the motion is DENIED without prejudice.

**Background**

This putative class action lawsuit arises out of alleged unlawful collection practices engaged in by the defendants in their efforts to collect on a bail bond obligation after the bond forfeiture judgment had been set aside.

This Court has previously summarized the facts of this case in its Order and Reasons dated March 6, 2012, in which the Court granted in part and denied in part the defendants' motion to dismiss the plaintiff's complaint; in particular, the plaintiff's abuse of process claim survived the defendants' pleadings challenge and the Federal Debt Collection Practices Act claims were

dismissed, but with permission to cure. With leave of Court, the plaintiff filed a second amended complaint on March 15, 2012. The defendants again challenged the sufficiency of the plaintiff's amended FDCPA claims. On May 31, 2012 this Court granted in part and denied in part the defendants' motion such that some of the plaintiff's FDCPA claims survived the defendants' challenge. In light of this motion practice, the facts of this case are familiar:

On September 30, 2007 Camilla Barlow paid AAA Bail Services, Inc. $475.00 for a bail premium in order to bail her son, Eric Dougherty, out of jail. In connection with posting the bond, and as collateral, Barlow was required to execute a promissory note for $3,500.00 and an indemnity agreement. In fact, Barlow executed various contracts, which include indemnification obligations including a "Contract & Application for Bail Bond," "Indemnitor Application," and "Bail Bond Indemnitor Promises."

On February 1, 2008 Dougherty failed to appear for his arraignment; the court issued a bench warrant and an order of bond forfeiture. One week later, on February 8, the court executed a judgment in favor of the State of Louisiana and against Eric Dougherty, as principal, and Safety National Casualty Corporation, as surety, for $3,500.00. On March 4, 2008 Eric Dougherty appeared in court through counsel, at which time the bench warrant was

recalled and the bond forfeiture judgment was set aside.[1]

Barlow complains that, beginning on March 11, 2008 Singletary & Associates, A Professional Law Corporation, initiated collection efforts against Barlow for the bond amount of $3,500.00, including by sending letters on several occasions and, on one occasion, a non-lawyer telephoned Barlow, failed to identify herself as a non-lawyer and threatened litigation to collect the $3,500.00 bond.[2]

Barlow says that Commercial Surety Consultants, Inc. And Financial Recovery Agency, Inc. also attempted to collect the $3,500.00 by correspondence dated February 2, 2010, February 22, 2010, and March 4, 2010. For example, the February 22, 2010 letter stated:

> Re: Judgment of Bond Forfeiture $3,500.00....
>
> Dear CAMILLA BARLOW,
>
> This account has been listed with our office for collection.

---

[1]According to the defendants, Safety National was not provided notice, nor was it entitled to notice under Louisiana law, of the later appearance of the criminal defendant. And, defendants suggest, even though the bond may have been deemed satisfied, Safety National still had a judgment recorded against it and was not provided with notice by the court or sheriff of its satisfaction. All of which this Court might consider in the context of future motion practice, once the pleadings are complete, that might present challenges beyond that of the technical sufficiency of the plaintiff's allegations.

[2]In particular, the plaintiff contends that Singletary & Associates sent correspondence on March 11, 2008, March 25, 2008, May 28, 2010 and June 21, 2010; she says that she received the telephone call on July 7, 2010.

> You are contractually obligated to pay this account because a judgment of bond forfeiture has been filed against SAFETY NATIONAL CASUALTY CORP. You may have an opportunity to reduce this debt by obtaining a cancellation of the bond forfeiture judgment. We advise you to seek independent legal advice to inform you of your rights and responsibilities. If you are unable to cancel this judgment of bond forfeiture or refuse to do so, we shall be left with no alternative but to seek the collection of the entire debt.
>
> This communication is from a debt collector. This is an attempt to collect a debt....
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid....

On July 7, 2010 -- the same day Barlow alleges that she received a phone call from Singletary & Associates threatening litigation -- Safety National Casualty Corporation indeed sued Barlow (and 25 other persons) in Baton Rouge city court for breach of contract based on the indemnity agreement; the lawsuit was drafted by Singletary & Associates. Six days later, the Baton Rouge city court returned the petition because of “improper cumulation of defendants”; the court invited counsel for Safety National to re-file its petition for damages for breach of contract to indemnify a commercial surety, but Safety National has yet to re-file. Nonetheless on July 26, 2010 Singletary & Associates, by letter, informed Barlow that she had been sued.

On December 14, 2010 Barlow, on behalf of a putative class, sued Safety National Casualty Corporation, Singletary & Associates,

A.P.L.C., Financial Recovery Agency, Inc., and Commercial Surety Consultants, Inc. in the U.S. District Court for the Middle District of Louisiana, alleging three violations of the Fair Debt Collection Practices Act and a claim for abuse of process under Louisiana law. In response to Barlow's contentions that the defendants' pursuit of Safety National's indemnity rights constituted improper collection efforts, the defendants responded with a motion to dismiss. Almost one week before her opposition papers were due, on March 22, 2011, Barlow filed a notice of dismissal, and the lawsuit was dismissed without prejudice.

Just two weeks later, on April 8, 2011, Barlow re-filed her complaint, again invoking the U.S. Middle District court's federal question jurisdiction under the Fair Debt Collection Practices Act, and asserting the same claims and factual allegations. The plaintiff seeks to represent a class defined as:

> All persons who were required to execute an indemnity promise in connection with a Safety National Casualty Corporation bail bond obligation and who were subject to unlawful collection actions by [the defendants] even though any underlying bench warrant(s) had been recalled and any previously rendered Bond Forfeiture judgment(s) had been set aside.

Barlow contends that each of the defendants were acting as agents of Safety National Casualty Corporation in the capacity as "debt collectors."

This putative class action was reassigned to this Court from the Middle District of Louisiana on August 29, 2011. On January 6,

2012 Barlow, with leave of Court, filed a first amended class action complaint, in which she added Commercial Surety Consultants, LLC as a defendant. As noted, the defendants moved to dismiss the plaintiff’s amended complaint, contending that the plaintiff’s claims fall outside the scope of the Fair Debt Collection Practices Act and that, even if the Act applies, the plaintiff fails to state a claim for relief under both the Act and state law principles of abuse of process. The Court granted in part and denied in part the defendants’ motion: in particular the Court determined that the plaintiff had stated a claim for abuse of process, and rejected the defendants’ argument that the bail bond indemnity obligation did not constitute a debt; however, the Court determined that the plaintiff failed to state a claim for FDCPA violations. The plaintiff was permitted to amend her complaint, which she did. In response to the defendants’ challenge to the sufficiency of the newly-amended FDCPA claims, the Court dismissed a few but not all of the FDCPA claims. The defendants then requested that this Court strike the plaintiff’s abuse of process claim pursuant to Louisiana Code of Civil Procedure article 971; the Court denied the request as untimely on July 24, 2012.

On November 16, 2012 the plaintiff filed a motion to certify class, which is noticed for submission on March 27, 2013. The plaintiff now seeks an order approving a proposed putative class communication.

I.

*A.*

District Courts have "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." See Gulf Oil Co. v. Bernard, 452 U.S. 89, 100-102 (1981); see also Fed.R.Civ.P. 23(d).[3] Nonetheless, because of First Amendment concerns implicated in restriction of communication, the Court must balance the need for limitations with the potential interference with the

[3] Federal Rule of Civil Procedure 23(d) provides:

(d) Conducting the Action.

(1) In General. In conducting an action under this rule, the court may issue orders that:

(A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;

(B) require–to protect class members and fairly conduct the action–giving appropriate notice to some or all class members of:

(i) any step in the action;

(ii) the proposed extent of the judgment; or

(iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;

(C) impose conditions on the representative parties or on intervenors;

(D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

(E) deal with similar procedural matters.

(2) Combining and Amending Orders. An order under Rule 23(d)(1) may be altered or amended from time to time and may be combined with an order under Rule 16.

rights of the parties. Id. When communications are misleading, coercive, or improper attempts to undermine Rule 23, they may be restricted. See Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003)(collecting cases).

And, reflecting the guidance regarding the Court's power to restrict communications between attorneys and potential class members announced in Gulf Oil Company v. Bernard, 452 U.S. 89 (1981), the Middle District of Louisiana's Local Rule 23.1(D) provides:

> D. 1. Whenever a party or counsel desires to prohibit another party or counsel from communicating concerning such action with any potential or actual class member not a formal party to the action, he or she shall apply in writing to the court for such an order. In such application, the parties must set forth with particularity the abuses they fear will result from such communication, along with the form of remedy they believe would be appropriate to prevent frustration of the policies of Rule 23.
> 2. The court will not enter an order prohibiting communication with members of the class in the absence of a clear record (and when necessary, an evidentiary hearing) reflecting:
> a. specific findings regarding the abuse the court seeks to prevent;
> b. the need for such an order, weighing the abuse sought to be corrected and the effect it will have on the right of a party to proceed pursuant to Rule 23 without interference.
> 3. Any attorney who communicates with the class shall preserve and retain in his or her files, until the final conclusion of the action, a copy of all communications which he or she has sent to any members of the class or potential class.

*B.*

The plaintiff requests that the Court approve the following proposed putative class communication, which her counsel intends to mail to a list of indemnitors from a spreadsheet produced by defendants:

> RE: Bail Bonds Collections by Singletary & Associates/ Commercial Surety Consultants, Inc.
>
> Dear ______
>
> You may be a member of a class action lawsuit involving the collection practices of Singletary & Associates, A.P.L.C. and Commercial Surety Consultants, Inc. Please indicate your answer to the following question and return the form in the enclosed self addressed, stamped envelope to the Law Offices of Andre P. LaPlace, 2762 Continental Drive, Suite 103, Baton Rouge, Louisiana 70808.
>
> ___ The person I helped bond out of jail appeared in Court within 6 months of a bench warrant being issued for failure to appear.
> ___ The person I helped bond out of jail did not go to court.
>
> Thank you,
>
> Andre P. LaPlace

II.

In support of her request for approval of this proposed communication, the plaintiff contends that she needs "to ascertain the breadth of the putative class", that "propounded discovery of the defendants' collection records have not yielded sufficient data to identify the putative class, as defined", and that Federal Rule of Civil Procedure 23(d) "authorizes the District Court to regulate

communications with potential class members before certification. Gulf Oil Co. v. Bernard, 452 U.S. 89, 100-102 [(1981)].” That is the extent of plaintiff’s submission.

The defendants urge the Court to deny the plaintiff’s motion because the information sought by the proposed communication can only be accurately and reliably determined by reviewing the public record; confirming the veracity of any response to the proposed communication would itself require a review of the relevant public record.[4] Thus, defendants insist that the proposed communication would not result in any meaningful, accurate or reliable information regarding a criminal defendant’s appearance. The Court agrees.

---

[4]The fact that the plaintiff is seeking this information by these means, the defendants suggest, is telling about this case: the only information the defendants have for each indemnitor is the indemnity contract and the judgment of bond forfeiture which in turn prompted the pursuit of indemnity. As defendants have pointed out previously, no statutory notice of a criminal defendant’s eventual appearance after forfeiture is provided and there is no cancellation by the operation of law of the recorded judgment in the mortgage record.

The defendants continue: “If Barlow wants to sue Defendants for pursuing indemnity when the criminal defendant appeared within the six-month window, such a claim presumes that Defendants knew the criminal defendant had appeared. All evidence has established this is not the case. If Barlow wants this Court to conclude that Defendants are liable for relying on their contracts when no notice is provided -- meaning that Defendants had an obligation to check the record of each criminal case to determine when there had been an appearance -- the same effort would be required on Barlow’s part to satisfy the elements for certification.” This argument is more directed at the merits of certification (and, ultimately, of the underlying dispute of course), but plaintiff should be mindful of these issues when evaluating litigation risk.

It is noteworthy that, as defendants point out, the timing of the plaintiff's motion creates a logistical issue: the submission date on the motion for class certification is March 27, whereas any responses to the proposed communication would likely be sporadic over a significant period of time;[5] thus, the proposed communication would be of limited use, if any, given the timing of the request relative to the hearing on the certification motion.[6]

In light of the arguments raised by the defendants, and without the benefit of any response by the plaintiff, the Court finds that the proposed class communication would not result in any meaningful, accurate or reliable information regarding a criminal defendant's appearance. The plaintiff has not suggested why the targeted information cannot be obtained from the public record.[7]

Accordingly, IT IS ORDERED: that the plaintiff's motion to

---

[5]Plaintiff's counsel provides no deadline for responses in the proposed communication.

[6]The plaintiff should be mindful of the Court's concern that the information sought by the proposed communication would seem to go towards the plaintiff's burden of showing numerosity. Because the plaintiff filed her motion for class certification months ago, the Court assumes that there is some evidence submitted to support this necessary prerequisite to class certification. If not, perhaps the plaintiff will be seeking a continuance of the submission date on the motion for class certification until the public records reveal potential class members.

[7]Nor could plaintiff's counsel credibly dispute that any information obtained from the proposed mailing would, in any event, need to be verified by cross-checking the public record.

approve putative class communication is DENIED without prejudice.[8]

New Orleans, Louisiana, March 6, 2013.

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

[8]The plaintiff's motion is denied without prejudice; if plaintiff submits a more comprehensive request for class communication, which addresses the defendants' concerns, the Middle District might wish to entertain a new request. It is timely for this case to be returned to that court and it is SO ORDERED.